UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Case No. 10-cr-256-14, 16 (RCL) |
| | : | |
| MOISES HUMBERTO RIVERA-LUNA, | : | |
| and TOKIRO RODAS-RAMIREZ, | : | |
| | : | |
| Defendants. | : | |

### GOVERNMENT'S MOTION IN LIMINE REGARDING ADMISSIBILITY OF EL SALVADORIAN JAIL RECORDS

The United States of America, by and through its undersigned counsel, moves in limine to seek the admission of certain jail records relating to defendant Moises Humberto Rivera-Luna pursuant to Fed. R. Evid. 807. In particular, at trial, the Government will seek to admit jail records received from El Salvador showing defendant Rivera-Luna's prison location, his gang affiliation and nickname, his release date, and his visitor log. As demonstrated below, while El Salvador has refused to provide a records certification for these records, they should be admitted under Fed. R. Evid. 807. *See, e. g., United States v. Turner*, 718 F.3d 226 (3rd Cir. 2013) (admitting foreign business records under Rule 807).

### I.  FACTUAL BACKGROUND

As the Court knows, the defendants are charged with RICO conspiracy in violation of 18 U.S.C. § 1962(d). Doc. 330 (Fourth Superseding Indictment). They are charged with committing certain criminal acts on behalf of MS-13. Most of the violent acts set forth in the indictment occurred from 2008 to 2010. Defendant Moises Humberto Rivera-Luna was deported prior to 2008, and he was not in the United States when the crimes charged in the indictment took place. The Government expects that the evidence at trial will show that witnesses spoke directly with Rivera-Luna via telephone, but only one witness—an El Salvadorian police officer—met with him

face-to-face. Importantly, with one possible exception, the co-conspirators who are cooperating with the Government did not know him by his full, legal name. Instead, they knew him as "Viejo Santos" and that he was incarcerated in El Salvador.

During the investigation in this case, pursuant to a request by agents with Homeland Security, the legal attaché in El Salvador requested documents relating to Rivera-Luna. *See* Exhibit 1 (Attaché Request). El Salvador responded by sending jail records for Rivera-Luna. These records include his full name, family members, gang affiliation, and gang nickname. *See* Exhibit 2 (Jail Documents). El Salvador also sent documents listing Rivera Luna's visitor log. *See* Exhibit 3 (Visitation Records). The records each bear an apostille – an official certification that authenticates the public official's signature and seal on each document. *See, e. g., Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1305 n. 13 (11th Cir. 2022) (noting that an apostille is an international method of verification similar to a notary stamp). However, recently, pursuant to a second request from the Government, the El Salvadorian government has refused to provide a records certification for the documents pursuant to 18 U.S.C. § 3505 or Fed. R. Evid. 803(6) citing only its "public policy" without further explanation. Nonetheless, because the records are authentic and are the type of records regularly kept by a prison without any motivation to provide inculpatory evidence in this case, the records should be admitted at trial under Fed. R. Evid. 807.

**II.    ARGUMENT**

**A. Legal Standard**

Under Rule 807, the residual hearsay exception, a court may admit an out-of-court statement not covered by Rules 803 or 804 if: (1) the statement has equivalent guarantees of trustworthiness; (2) it is offered for a material fact; (3) it is more probative on the point for which it is offered than any other evidence the proponent can offer through reasonable efforts; and (4)

admitting it will best serve the interests of justice.  Fed. R. Evid. 807; *Turner*, 718 F.3d at 233.

      **B.**      **The El Salvadorian Records should be admitted.**

      Under Rule 807, the courts have admitted foreign business records, reasoning that the businesses and customers rely on such records for normal business transactions.  *See, e. g., United States v. Turner*, 718 F.3d 226 (3rd Cir. 2013); *United States v. Whitfield*, 249 F.3d 366, 376 (5th Cir. 2001), *abrogated on other grounds by Whitfield v. United States*, 543 U.S. 209 (2005); *see also United States v. Prevezan Holdings*, 319 F.R.D. 459 (S.D.N.Y. 2017) (admitting foreign bank records).  Likewise, the courts have admitted other records that are commonly relied upon such as foreign birth certificates.  *See United States v. Vidrio-Osuna*, 198 Fed. Appx. 582 (9th Cir. 2006).  Finally, the courts have admitted similar documents over *Crawford* objections.  *See United States v. Dumeisi*, 424 F.3d 566 (7th Cir. 2005) (admitting "Baghdad file" containing business records, phone logs, and intelligence reports).

      Here, the El Salvadorian jail documents should be admitted.  First, they easily satisfy the authenticity requirements of Rule 902.  They each bear an apostille, and they appear to be standard legal documents that were produced in response to a request from our legal attaché.  *Vidrio-Osuna*, 198 Fed. Appx. at 583; *see also United States v. Pintado-Isiordia*, 448 F.3d 1155, 1157 (9th Cir. 2006) (admitting Mexican birth certificate bearing an apostille).  Second, they are the kinds of records regularly kept by prisons—the defendant's name, gang affiliation, if any, dates of incarceration, family, and visitor information.  *See, e. g., United States v. Dancy*, 861 F.2d 77 (5th Cir. 1988) (noting that California Department of Corrections packet including copies of defendant's prior criminal judgments and fingerprint card are typically held by corrections officials and are routine factual matters not related to any criminal investigation); *United States v. Quezada*, 754 F.2d 1190 (5th Cir. 1984) (warrant for deportation including defendant's fingerprint and

unambiguous factual matters admitted at trial); *United States v. Agustino-Hernandez*, 14 F.3d 42 (11th Cir. 1994) (admitting immigration records routinely and mechanically kept by INS); *see also United States v. Bachsian*, 4 F.3d 796 (9th Cir. 1993) (admitting bills of lading, commercial invoices, and packing lists under residual hearsay exception).  Moreover, the records themselves are corroborated by Rivera-Luna's tattoos showing that he is a MS-13 member and affiliated with the Normandie clique.  In addition, the records plainly go to a material fact:  whether defendant Rivera-Luna is in fact "Viejo Santos."  Finally, while the Government can present other evidence bearing on Rivera-Luna's role in the charged offenses, the records provide strong corroborative evidence of expected testimony from cooperators regarding payments they made to him via Western Union transfers to his wife and others listed on his visitor log.  Accordingly, admitting the records—when there is no reason to question their authenticity and no reason to think they were somehow colored by anticipated litigation—serves the interests of justice.

WHEREFORE, for the foregoing reasons, the Government asks that the records be admitted at trial.

                              JEANINE FERRIS PIRRO
                              United States Attorney

By:   /s/ NIHAR R. MOHANTY
       NIHAR R. MOHANTY
       D.C. BAR NO. 436-686
       Assistant United States Attorney
       601 D Street, N.W., Fifth Floor
       Washington, D.C. 20530
       (202) 252-7700
       Nihar.Mohanty@usdoj.gov

       DAVID L. JAFFE
       Chief, Violent Crime and Racketeering Section

       s/ *Lakeita F. Rox-Love*
       LAKEITA F. ROX-LOVE
       Trial Attorney
       MS Bar No. 103871
       1301 New York Avenue NW
       Washington, D.C. 20530
       (202) 307-3345
       Lakeita.Rox-Love@usdoj.gov