UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 10 Cr. 256 (RCL) |
| v. | : | |
| TOKIRO RODAS RAMIREZ | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION TO QUASH**
**IMPROPER RULE 17(C) TRIAL SUBPOENA**

## INTRODUCTION

Defendant Tokiro Rodas Ramirez moves this Court to quash a trial subpoena issued by the prosecution on June 1, 2023 to the TransUnion national credit company seeking financial records for various members of the defendant's family. As explained herein, the subpoena violated the requirements of Federal Rule of Criminal Procedure 17(c) because it was an improper "fishing expedition" in violation of the Supreme Court's decision in United States v. Nixon, 418 U.S. 683, 699–700 (1974).

Moreover, the subpoena improperly stated that TransUnion "may comply" with the subpoena by sending any responsive the documents directly to the prosecutors – not the court. TransUnion provided the requested information more than two months before the expected start of the third trial of this case. The Government's request was a violation of Rule 17(c). See United States v. Vo, 78 F.Supp.3d (D.D.C. 2015)(Rule 17 does not allow the prosecution to request the pre-trial production of materials to the Government without prior court approval).[1]

[1] A copy of the subpoena is Exhibit 1. The subpoena does not contain any approval by the Court. In a letter dated August 6, 2026, undersigned defense counsel sent a letter to the Government seeking to determine, *inter alia*, if the subpoena was authorized but to date, the prosecutors have not responded. The letter is Exhibit 2 to this motion.

As a result of the multiple violations of the plain and unambiguous language of Rule 17, this Court should quash the subpoena and order the return of all materials received by the prosecution. Moreover, the Court must ensure that the Government did not make improper derivative use of the materials that were produced. The defense respectfully requests that the Court direct the Government to identify any person(s) who had access to the production, so that the defense can consider what additional remedies may be necessary.

**RELEVANT FACTUAL BACKGROUND**

On June 1, 2026, the United States Attorney's Office for the District of Columbia issued a Rule 17(c) trial subpoena to TransUnion, seeking "all records" for the defendant's former common-law wife and her family: (1) Blanca Irma Motino Moreno; (2) Maria Guadalupe Motino Moreno; and (3) Delmy Yolany Motino Moreno. The subpoena stated that date and place of appearance for the subpoena was September 14, 2026, at the United States District Courthouse for the District of Columbia – the date and time of the then scheduled trial of this case.

The subpoena also stated, however, that TransUnion "may" comply with the subpoena by providing the documents to the United States Attorney's Office, preferably by July 1, 2026. The relevant portion of the Rule 17(c) subpoena appears as follows:

In lieu of personally appearing, you may comply with this subpoena request by promptly providing the undersigned Assistant U.S. Attorney with all responsive records and a completed Declaration of Custodian of Record form (please see enclosed form) **in advance of the September 14, 2026, trial date (preferred date of July 1, 2026).**

On July 30, 2026, the prosecution sent electronic copies of the information produced by TransUnion, which includes detailed information concerning the spending habits, credit card accounts, loan applications, and the like for the three targets of the subpoena. Neither Blanca Irma Motino Moreno, Maria Guadalupe Motino Moreno, or Delmy Yolany Motino Moreno was a witness at either of the first two trials of this case for either the prosecution or the defense.

Undersigned defense counsel can think of no principled reason why their personal financial information would be relevant and/or admissible at the third trial of this case.

## LEGAL ANALYSIS

### 1. The Requirements Of Rule 17(c)

Rule 17(c) of the Federal Rules of Criminal Procedure governs the issuance of subpoenas for the production of documentary evidence at trial and provides, in relevant part that:

> A subpoena may order the witness to produce the books, papers, documents, data or other objects the subpoena designates. **The court may direct the witness to produce the designated items in court before trial** . . . . When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them (emphasis added).

Thus, by its express terms, only the "court" may direct the witness to produce the subpoenaed materials prior to "trial." A Rule 17(c) subpoena cannot be used as a proxy for improperly obtaining evidence outside of the ordinary discovery procedures set forth in the federal rules. Thus, the "purpose of rule 17(c) is not to facilitate discovery but, rather, to enable one to obtain and inspect **evidentiary material** prior to trial." United States v. Gel Spice Co., 601 F. Supp. 1214, 1224 (E.D.N.Y. 1985)(emphasis added).

The Supreme Court has held that the party seeking documents through a Rule 17 subpoena has the burden of demonstrating: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and not intended as a general "fishing expedition." United States v. Nixon, 418 U.S. 683, 699-700 (1974).

The requirement that subpoenaed materials be "evidentiary" means that a subpoena may only seek production of specifically identified items that are each "admissible as

evidence." United States v. Bowman, 341 U.S. 214, 221 (1991). Moreover, the materials must meet the test of relevancy and admissibility at the time they are sought. See United States v. Marchisio, 344 F.2d 653, 669 (2d Cir. 1965). It is also well settled that Rule 17(c) cannot be used as a device to obtain "production of materials whose evidentiary use is limited to impeachment." United States v. Cherry, 876 F. Supp. 547, 553 (S.D.N.Y. 1995). Accord United States v. Khan, 2009 WL 152582, at * 6 (E.D.N.Y. January 20, 2009); United States v. Fields, 663 F.2d 880, 881 (9th Cir. 1981); United States v. Jasper, 2003 WL 1107526, at *2 (S.D.N.Y. Mar. 13, 2003) United States v. Giampa, 1992 WL 296440, at *2-*3 (S.D.N.Y. Oct. 2, 1992).

The Government did not seek prior judicial approval for the issuance of the subpoena to TransUnion and thus by its very nature violates the requirements of Rule 17(c). The defense does not believe that the subpoena satisfies the remaining requirements set forth in *Nixon* because the credit information of the three individuals is not relevant to any issue in this case and would not be admissible at trial.

2. **The Decision in *United States v. Vo* Expressly Prohibits The Government's Conduct In This Case**

In United States v. Vo, 78 F. Supp. 3d 171 (D.D.C. 2015), prosecutors from the United States Attorney's Office for the District of Columbia issued a trial subpoena to the District of Columbia's Correctional Treatment Facility (CRTF) seeking the "visitation logs, call logs, and recorded telephone calls" of two inmates. Exactly as in this case, the subpoena stated that the CTF "may comply" with the subpoena by providing the requested information directly to the prosecutors prior to the trial date. Vo, 78 F.3d at 174-75.

Judge Sullivan granted the defendants moved to quash the results of the subpoena, noting that Rule 17 "describes only one scenario under which a subpoena may be used to obtain pretrial

production—when the Court so directs." Id. at 179. The Court was unequivocal in its condemnation of the practice used in this case:

> A subpoena, moreover, is issued by a court, bears a court's seal, and is backed by the threat of court-imposed sanctions for non-compliance. It is not the tool of a party to use as desired; rather, it is a tool provided by Rule 17 and limited to those uses authorized by Rule 17 Accordingly, it was improper for the government to issue the subpoenas without obtaining court approval.

Id. at 179–80 (D.D.C. 2015).

Under the totality of circumstance, there is no meaningful distinction between the facts of *Vo* and the prosecution's conduct in this case. The Government used the authority of the Court to obtain materials it had no basis to obtain and/or review. The production was sent to the prosecutors, not the Court. The Court should therefore grant the motion to quash.

***3. Fruits Of The Poisonous Tree***

In this case, the Court should not merely quash the improper subpoena issued by the prosecution but should determine whether the Government has made any derivative use of the information that it obtained. It is well settled under the exclusionary rule that the prosecution cannot profit from its misconduct and that:

> evidence derived from an illegal search or seizure must be suppressed unless the government can show intervening circumstances sufficient to break the causal connection between the Fourth Amendment violation and the resulting evidence. See Brown v. Illinois, 422 U.S. 590, 602-03, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). This exclusionary rule extends to any fruits of a Fourth Amendment violation – "whether such evidence be tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention."

United States v. Wills, 316 F. Supp. 3d 437, 451 (D.D.C. 2018).

The defense does not know whether the prosecution made any derivative use of the documents obtained from the improper subpoena, but that information is critical to determine

whether the Court must take additional remedial steps to protect the defendant's rights.

**CONCLUSION**

For all of these reasons, the defense believes that the Motion To Quash should be granted and that the Court should Order the prosecution to disclose what information was reviewed by any member of the trial team or shared with its potential witnesses.

Respectfully submitted,

Robert Feitel

Robert Feitel, Esquire
1300 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
D.C. Bar No. 366673
202-255-6637 (cellular)
RF@RFeitelLaw.com

/s/Sandi S. Rhee

Sandi S. Rhee, Esquire
Law Office of Sandi S. Rhee
10001 Georgetown Pike, #63
Great Falls, Virginia 22066
D.C. Bar No. 502417
202-285-8366(cellular)
SandiRheeLaw@Gmail.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via ECF to the prosecutors assigned to this case this 18th day of August 2026.

Robert Feitel

____________________________

Robert Feitel